JAMES MORSE *v.* EDGAR J. POWERS.

*Agency.*

The plaintiff's son conducted the business of a small store belonging to the plaintiff, under an agreement that he should have a support for himself and family out of it, as a compensation for his services. Both took goods from the store as they wanted for for family use, and no account was made of them. While the son was thus in the store, the defendant doctored his wife, and took goods out of the store in payment for his services, which were necessary, by agreement with the son, who had no means of support except what he derived from the store as aforesaid. When he left his father's employ, he credited the defendant's services on the store-books; but the plaintiff erased the credit, and brought this suit to recover for the goods thus delivered to the defendant; and it was *held,* that he could not recover.

BOOK ACCOUNT. The only question in the case was as to the allowance of the defendant's account for doctoring the wife of the plaintiff's son ; as to which the auditor reported the following facts :

The plaintiff's son, James Morse, Jr., was engaged in conducting and attending to the business of a small store belonging to the plaintiff, under an agreement that he should attend to the business, and have a support for himself and family out of it; and the plaintiff had said that his son was to have half the profits of the business ; but no inventory was taken of the stock on hand when the son went into the store ; nor was any account kept to show what the plaintiff or his son took out of the store. Each took goods from the store as they wanted for family use ; but the auditor did not find that a partnership existed between them. While the son was thus engaged in the store, the defendant, a physician, was called to visit his wife, and, on his first visit, went into the store, and it was then and there agreed between the defendant and the son that the defendant should take his pay for doctoring out of the store. The defendant continued to doctor the son's wife nearly a year under said arrangement, and charged his services therefor to the son ; during which time he received the goods from the plaintiff's store, which were charged to him in the plaintiff's account allowed by the auditor. Most of said goods were delivered to the defendant by the son, and the charges therefor made by him. Two or three days after the son left the store, he credited the defendant the amount of his services on the plaintiff's books. But the plaintiff refused to let the credit stand, and erased it. The plaintiff knew that the defendant

was attending upon his son's wife, and that his son had no means of paying him for his services, except what he was receiving for attending to the business of the store; and knew that the defendant began taking goods from the store about the time he commenced doctoring his son's wife, and that the goods were charged to the defendant upon the plaintiff's books. When the defendant was making his third or fourth visit, the plaintiff met him in the road, and had a talk with him about doctoring her, and said his son had paid out a good deal of money for doctoring her, and that still another bill was to be made for the same purpose, which would have to come out of him, but that he did not care about the bill, if it did the woman any good. The auditor found no express agreement by the plaintiff to pay the defendant's said bill; but found that the defendant relied upon the assent of the plaintiff to the arrangement made between the defendant and the plaintiff's son, and that said reliance was based upon the plaintiff's knowledge aforesaid, and upon the conversation between the plaintiff and defendant above mentioned. The plaintiff's son had to depend upon his labor and interest in said store, such as it was, for the support of his family. The defendant's charges were reasonable, and his services necessary.

If the defendant's said account was to be allowed, the auditor found due to the defendant the sum of $49.36. If not, he found $99.23 due to the plaintiff.

The court, at the April term, 1872, ROYCE, J., presiding, rendered judgment on the report for the plaintiff. Exceptions by the defendant.

*H. A. Burt* and *B. Hall*, for the defendant.

*Fitch & Newton*, for the plaintiff, cited *Denison* v. *Tyson*, 17 Vt. 549, 555; *Squires et al.* v. *Barber*, 37 Vt. 558; Chit. Cont. 819; 1 Am. Lead. Cas. 556, 574; *Smith* v. *Watson*, 14 Vt. 332; *Carter* v. *Howard*, 39 Vt. 106.

The opinion of the court was delivered by

REDFIELD, J. This action is book account. The auditor's report states that the plaintiff's son, James Morse, Jr., had charge and conducted the business of the plaintiff's store of goods, in Franklin, near Canada line. That there was no special agreement as to compensation for the son's services. But it was

"agreed that James, the son, should attend to the business of the store, and should have a support for himself and family out of the business." Both the plaintiff and the son took goods as they wanted, from the store, for family use, and no charges were made or account kept of them. The auditor further reports that the goods were delivered by James, Jr., in payment of defendant's services as physician in attending upon the son's wife, and were delivered from time to time, as the services accrued; and when James, Jr. left his father's service, he cancelled the account, by crediting on the books the defendant's account for these professional services. The auditor finds defendant's services necessary.

There is no doubt that the agreement at the time the goods were delivered to the defendant, that they were received in payment of defendant's services, was binding, as between the parties to the contract. The only question would seem to be whether James Morse, Jr. was authorized to deliver the goods in payment of his own debts.

The plaintiff agreed that the son should have "*support* for himself and family, from the business"; and he was in the habit of appropriating the goods for that purpose. Proper medical treatment to the sick, is deemed, by usage, as necessary as the provision of bread to the hungry. And, we think, the facts reported authorized the son to clothe and feed his family from the avails of the store, and, by the same means, procure "necessary" medical attendance to those of them that were sick.

II. The auditor finds that the defendant *relied on the plaintiff's assent* to the arrangement made between James, Jr. and the defendant. The report does not state that the plaintiff expressly *assented* to the arrangement, but that defendant's reliance was *based* on certain specific facts reported. And it seems that plaintiff was aware that the son was delivering goods to the defendant, while the services were being rendered; that he knew James had no other means with which to pay for those services, and that he told the defendant that "his bill would have to come out of him, but he did not care about the bill if it did the woman any good." When the auditor states that the defendant *relied* on the plaintiff's *assent*, "*based*" on these facts, the natural

construction of the language used would be, that the plaintiff expressly assented to the arrangement. They were certainly very satisfactory proof of such assent. But however this may be, we are satisfied that the agency of James, Jr., authorized him to make the arrangement with the defendant. The judgment of the county court is therefore reversed, and judgment on the report that the defendant recover of the plaintiff forty-nine dollars and thirty-six cents, and interest from the 24th of April, 1872.