Argued January 16, decided January 23, rehearing denied March 5, 1912.

## JACKSON *v*. PACIFIC COAST CONDENSED MILK CO.

[120 Pac. 1.]

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—HOSPITAL FUND.
1. A contract of employment which fixes the wages of an employee for specified work, and which authorizes the deduction of a specified sum per month for a hospital fund of the employer, maintaining a hospital fund association regulated by by-laws providing that all employees shall be members of the association, and entitled to receive the benefits including free medical attention, creates an obligation on the part of the employer to pay medical expenses incurred by an employee sustaining a personal injury during the employment.

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—HOSPITAL FUND.
2. Where an employer maintaining a hospital fund for its employees to furnish them free medical attention, but not maintaining a hospital, knew of an injury to an employee when received, and of the painful results thereof, and the employee without giving the employer formal notice of the injury or asking for a physician sought proper medical aid, the employer was liable for the medical expenses incurred.

From Washington: JAMES U. CAMPBELL, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by George Jackson, by O. C. Jackson his guardian *ad litem*, against the Pacific Coast Condensed Milk Co. The facts are as follows:

Plaintiff in June, 1908, was in the employ of defendant at its factory as a laborer at the agreed wage of 15 cents per hour, and it was agreed that defendant was to retain 50 cents per month as hospital fees from such wages. While performing the duties of his employment on June 28, 1908, his left leg was broken, but the injury was of such a nature that he did not realize that there was a fracture, although it caused him great suffering. He continued at his work for several days, during which time he complained of the injury to his boss at different times, and also reported his inability to work. He consulted a physician, Dr. Ward, who he understood was the company's physician, and was given some liniment for external application. He reported to the bookkeeper that he had consulted Dr. Ward, and was told it was all right. Plaintiff's condition continued to grow worse, and in August, 1908, being unable to work, he consulted another physician, Dr. Leonard, who pronounced the injury a fracture, and he set it in splints. There was not much inprovement until May, 1909, when plaintiff consulted Dr. Wilson, who operated upon the bone to induce it to unite. So far as the record shows, the defendant does not maintain a hospital, but simply uses the hospital funds to defray the expenses for medical treatment of the members of the Hospital Fund Association, who are entitled to aid therefrom. On November 27, 1908, defendant paid all bills incurred by plaintiff for medical treatment prior to that date, but bills subsequently incurred by him it refused to pay, being the items for surgical treatment and attention and the expense of X-ray photos, amounting to the sum of $218.95. Plaintiff brought this action to recover that

sum. On the trial, at the close of plaintiff's evidence, defendant moved for judgment of nonsuit, which was denied, and verdict and judgment were rendered for plaintiff from which defendant appeals.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Williams, Wood & Linthicum* and *Mr. Isaac D. Hunt,* with an oral argument by *Mr. Hunt.*

For respondents there was a brief with oral arguments by *Messrs. Bagley & Hare.*

Opinion by MR. CHIEF JUSTICE EAKIN.

The only question involved on the appeal is the alleged error in the denial of the motion for judgment of nonsuit, which involves two questions: Whether plaintiff has established a contract on the part of defendant to pay such expense; and, if so, whether the injury and expense incurred in the treatment of it are within the contemplation of the contract.

1. Plaintiff's contract of employment is evidenced by the following:

"Forest Grove Factory.

George Jackson, No. 54, enters the employ of the Pacific Coast Condensed Milk Co. as gen'l help to be rated at 15¢ per hour from June 9, 1908; 50¢ per month to be deducted for Hospital Fund. Payment for each month's labor to be made on the 12th day of thefollowing month. I agree to the above.

George Jackson

H. H. Steward Supt."

The by-laws of the Hospital Fund Association of defendant are stated, in substance, in the answer of defendant as follows:

"On or about the first day of March, 1903, the defendant herein * * created what is known as the Hospital Fund, said fund being for the benefits of its employees. By the rules and by-laws of said Hospital Fund it was provided that all persons employed by the Pacific Coast

Condensed Milk Company at its factory located at Forest Grove, Oregon, should be considered members of the Hospital Fund Association, and, if a member in good standing and otherwise properly entitled thereto under the rules and by-laws of the said association, should receive the benefits of the Hospital Fund Association. It was further provided that the initiation fee to said association should be $0.50 and that monthly dues of the said association should be $0.50. It was further provided that the membership of any employee in the Hospital Fund Association and his right to the benefits thereof should be terminated by the discharge of any such employee by the defendant herein or by the discontinuance of work by any of the employees. It was further provided that the benefits to be derived by the injured or sick members of the Hospital Fund Association * * were that medical attention and drugs should be furnished to such member without expense to said member."

It is admitted by defendant that the hospital fund is not a separate fund or organization, but is in the hands of the defendant company, and that there are sufficient hospital funds to satisfy any judgment rendered in this case. The employment card signed by plaintiff and the company constituted the plaintiff a member of the Hospital Fund Association, and entitles him to any benefits authorized thereby, and the dues which the defendant retained out of his wages was the consideration therefor. The employment of plaintiff and the payment from his wages of 50 cents per month, together with the stipulations of the by-laws, make a complete contract whereby defendant undertook to furnish to plaintiff medical attendance and drugs without expense to plaintiff in case of sickness or injury. We also find that the injury was received by plaintiff while in the employ of defendant, and therefore he was within the provisions of the by-laws.

2. It is contended by defendant that plaintiff chose his own physician, and that it should not be held liable

Sig. 6

as plaintiff did not apply to defendant for treatment. It appears that defendant knew of the injury at the time it was received and of the daily increasing suffering it caused and the disability resulting therefrom. Plaintiff does not say he gave defendant formal notice of the injury or asked for a physician, but it does appear that his superiors knew of the injury at the time it was received, and that it was serious, on account of which he was unable to perform regular work, and that he was receiving medical treatment. The company had no hospital and did nothing toward furnishing him needed attention, and he was justified in seeking proper medical aid, the expense of which should have been paid out of the hospital fund. The defendant recognized this fact in paying the first bills, namely, the bill of Dr. Leonard, for medical service and the expense of three X-ray photos of the fracture, thus approving plaintiff's act in choosing his own physician.

The case of *Miller* v. *Beaver Hill Coal Co.*, 48 Or. 136 (85 Pac. 502), upon which defendant rests his case, is not at all in point here. In that case no contract was proved. But a hospital which was at the service of defendant was maintained by the company with a competent surgeon in charge, and the company was under obligation to do nothing more. Neither was it shown that there were hospital funds available, which was the limit of the company liability. In the case at bar we have a contract and sufficient money available in the hospital fund, but no hospital nor medical attendant offered or available; and plaintiff was justified in seeking the necessary medical attention.

The motion for nonsuit was properly denied.

AFFIRMED.