### ROYAL NEIGHBORS OF AMERICA v. FORTENBERRY. (6 Div. 454.)

(Supreme Court of Alabama. Jan. 14, 1926. Rehearing Denied April 8, 1926.)

1. **Insurance** ⬅️133(1)—**Statute prohibiting life, or any other, insurance companies, or their agents, from making any contracts or agreements as to policy, other than is plainly expressed in policy, applies to life insurance generally, unless excepted therefrom by act regulating business of fraternal associations (Code 1923, § 8371; Gen. Acts 1911, p. 700).**

Code 1923, § 8371, prohibiting life, or any other, insurance company, or their agents, from making any contract of insurance or agreement, other than is plainly expressed in policy, applies to contracts, policies, or benefit certificates relating to life insurance generally, unless taken from under its influence by Gen. Acts 1911, p. 700, regulating business of fraternal benefit associations.

2. **Insurance** ⬅️151(2)—**Life policy and application attached thereto must be construed and considered together.**

Life policy and application attached thereto must be construed as a single act, and considered together, in ascertaining intention of contracting parties.

3. **Insurance** ⬅️131(2), 132—**Agent, duly authorized to bind insurance company by issue and delivery of insurance contracts, may, in absence of contrary statute, make binding contract by parol or binding slips.**

In absence of statutory provisions forbidding parol contracts to insure, memorandum contracts, or binding receipts or slips or books, an agent, duly authorized to bind company by issue and delivery of insurance contracts, may make such binding contracts by parol, or binding slips, etc.

4. **Insurance** ⬅️586, 783—**Mere issuance of policy does not, under rules of both old line policies and fraternal benefit societies, establish in beneficiary rights paramount to those of assured.**

It is the rule of both old line policies and fraternal benefit societies that mere issuance of policy does not establish in beneficiary rights paramount to those of the assured.

5. **Insurance** ⬅️237, 730½—**Right of action for failure to promptly issue, or negligence in issuing policy or certificate of insurance, is in insured or her personal representatives, and not in beneficiary named in application.**

Under either an old line policy or fraternal insurance, right of action for failure to promptly issue, or negligence in due issue of policy or certificate, pursuant to application, is in the insured or her personal representatives, and not in beneficiary named in application.

Appeal from Circuit Court, Jefferson County; Roger Snyder, Judge.

Suit by W. A. Fortenberry against the Royal Neighbors of America. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. A. Jacobs, of Birmingham, for appellant.

A third person, who is incidentally benefited by a contract between two other persons, cannot sue on the contract. 1 Williston on Cont. 748. A member of a fraternal benefit society, in the absence of law or agreement to the contrary, may change the beneficiary at will. 1 Williston, 741; Slaughter v. Grand Lodge, 68 So. 367, 192 Ala. 301. The affirmative charges requested should have been given.

Edgar Allen and W. H. Anderson, both of Birmingham, for appellee.

Appellee was the proper and only person to bring this suit. The insured did not make her estate the beneficiary; hence the personal representative could not bring the action. Suit may be maintained upon an oral contract. Liverpool, etc., Co. v. McCree, 98 So. 880, 210 Ala. 559.

THOMAS, J. The trial was had upon counts 3, 4, 5, and 7, based on an alleged contract to insure and the breach thereof in the failure to issue a policy of insurance made payable pursuant to the application. Each of the counts stated a good cause of action. L. & L. & C. Ins. Co. v. McCree, 98 So. 880, 210 Ala. 559, 561.

The evidence discloses that the application for insurance was of date April 4, 1923, the applicant was initiated into the lodge as a beneficial member on April 5th, the required certificate of good health was given by its physician on the 9th of that month, the application and certificate were transmitted by mail on the 10th to the home office, and there received on the 12th and approved April 19, 1923, by the Supreme Physician of the lodge. It is further shown that Mrs. Fortenberry, the applicant, had theretofore done all that was required of her as such member and applicant of said order, and that this action on her part was before the date of her death on May 10, 1923. The policy came by mail to the

company's representative about a week after the death of the applicant, and could not be delivered as a certificate of insurance. Cherokee Life v. Brannum, 82 So. 175, 203 Ala. 145.

It is shown by the application to the Supreme Camp that the by-laws, articles of association, and the application should "be the sole basis" of Mrs. Fortenberry's "admission to and membership" in the order, and "of any benefit certificate to be issued" by said "Royal Neighbors of America," the defendant corporation. It is also expressly agreed in that writing that the applicant constituted and made the officers of the local camp and of the Royal Neighbors of America, who had aided her in making the application, her "agents for such purpose" (sections E and G), and that the certificate of insurance applied for should not become operative, except as indicated, by delivery, etc. (by-laws, §§ 206, 229, 230). To this we will later advert. The form of the policy in evidence contracted for contained like provisions. Furthermore, an inspection of the policy in evidence, for the limited purpose of showing the form of the policy issued and when acted upon by the Supreme Lodge or officers thereof, discloses that the applicant had the right of acceptance or rejection when delivery of the certificate of insurance was sought to be made, and, upon acceptance, the final agreement of assured to all the conditions contained and to warrant her "sound health" at such time is shown by the form of the policy in evidence. The policy or certificate of insurance shows the order is a mutual benefit association, and it provided, among other things:

"Said fund out of which any liability hereon shall be paid shall be created by levying upon all reserve benefit plan members of this society sufficient assessments, from time to time, to pay all such liability in full. The member to whom this certificate is issued hereby admits and agrees that the organization issuing the same is a fraternal beneficiary society, and so incorporated, and as such is legally transacting its business, and that, in enforcing any rights or demands accruing to said member or beneficiary by virtue of this contract, this agreement shall be conclusive evidence that this corporation, at this time and then, is a fraternal beneficiary society.

"This benefit certificate is issued and accepted only upon the following express warranties, conditions, and agreements:

"First. That the Royal Neighbors of America is a fraternal beneficiary society as contemplated, and as defined by the statutes of the state where the member resides. * * *"

"Eleventh. It is agreed by the member that this certificate, the charter or articles of incorporation, the by-laws of the society, all the resolutions above referred to, and the application for membership and medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between the society and the member; and that any changes, additions, or amendments to said charter or articles of incorporation and by-laws of the society, or in any of said resolutions enacted subsequent to the issuance of this certificate, shall be binding upon the member and his or her beneficiary or beneficiaries, and shall govern and control the agreement in all respects in the same manner as if such changes, additions, or amendments have been made prior to and were in force at the time of the application for membership."

It is provided by section 203 of the by-laws that, upon acceptance of the application and its certificate by the local chapter and execution by recorder and certificates by its local and general physician, the same shall be delivered immediately to the Supreme Recorder, who shall forthwith sign and issue a benefit certificate which shall be signed by the Supreme Oracle. It is also provided as to delivery of the certificate:

That the applicant appear for adoption, if not already adopted as member, and that the applicant shall, "if in sound health, sign the benefit certificate, also sign receipt for same, and pay one dollar certificate fee, if same has not previously been paid, current assessment at date of acceptance, together with local camp dues for current month at date of acceptance, as provided in sections 283 and 286: Provided. that if the benefit certificate is not delivered to and accepted by the applicant while in sound health and within sixty days from the date of issue by the Supreme Recorder, the same shall, ipso facto, be absolutely null and void, and be returned to the Supreme Recorder, and if the applicant still desires a benefit certificate, new application must be made." Section 206.

Pertinent provisions of sections 229 and 230 are as follows:

"Sec. 229. *When Certificate Becomes Operative.*—The liability of this society upon any benefit certificate issued by it shall not begin until such certificate shall have been countersigned by the oracle and recorder of the local camp and actual manual possession thereof be delivered to the applicant therefor, and upon payment to the local recorder of the current assessment and dues if not already paid at the time of such delivery of said certificate and all while said applicant is in sound health. No local camp or any officer or member thereof and no officer of the society is permitted or authorized to waive any of the provisions of this section.

"Sec. 230. *No Waiver of Any By-Laws.*—No officer of this society, except as provided in section 32 hereof, nor any local camp officer or member thereof, is authorized or permitted to waive any of the provisions of the by-laws of this society which relate to the contract between the member and the society, whether the same be now in force or hereafter enacted. * * *"

The theory of the suit is for the breach of parol agreement to insure, or negligence in unnecessary delay in the transmission of the application and its conduct in the home office to the issue of the beneficiary certificate and its return for acceptance by the assured,

resulting in financial loss to the beneficiary, for which he might sue. Counsel for appellee insist that it was within contemplation of the parties and within the contract rights of assured and her beneficiary that action by the respective officers should be taken immediately, and without undue and unnecessary delay in the due conduct of the general business of the Supreme Lodge. They say if that due dispatch was not observed, and unusual and unnecessary delay in the premises occurred that amounts to negligence which causes loss to the applicant and assured, or to the beneficiary named in the policy, that the defendant is liable. The counts aver that the authorized agent of defendant promised —and that it was an inducement to the applicant—that the defendant would duly issue the policy to plaintiff's wife upon her complying with certain conditions, with which she duly complied. The defendant replies to this with a tendency of evidence that the delay was caused by a correction as to the age of Mrs. Fortenberry. The correction of her application purported to be signed by her on May 3d and received in the head camp on May 7, 1923. In this connection it should be observed that the application of the assured had stated the exact date of her birth, and from this it was a matter of calculation to ascertain that her true age was 20 years, instead of 19, as declared in the application. There was a further tendency of evidence that the applicant did not sign this correction, and that it was not a part of the application (for benefit certificate of insurance) when originally signed by Mrs. Fortenberry and delivered on April 4, 1923. It is apparent that on this issue of fact a question for the jury was presented. McMillan v. Aiken, 88 So. 135, 205 Ala. 35, 40. It is disclosed by the evidence that Mrs. Calloway was the sole accredited agent or representative of the Supreme Camp in Alabama as to the conduct of the business in question and with authority to act, within the line and scope of her duty in that behalf, for said camp. She testified that it was not her duty to grant the petition; that that had to be done at the home office; that it was not her duty to make any contracts or to pass on applications; that she had no authority to issue policies.

It is not shown specifically that the defendant had ever qualified to do business in Alabama with authorities of the state as provided by the statute (General Acts 1911, p. 700) regulating the business of fraternal benefit associations.

[1, 2] If defendant was contracting for life insurance in Alabama, as an old line company, the parties were bound by the general statutes that require that no life, nor any other, insurance company, nor any agent thereof, shall make any contract of insurance, or agreement as to policy, contract, other than is plainly expressed in the policy issues thereon. Code 1907, § 4579; Code 1923, § 8371. This section is held to apply to contracts, policies, or benefit certificates relating to life insurance generally, unless taken from under its influence by the act of April 24, 1911 (Acts, p. 700). National Union v. Sherry, 61 So. 944, 180 Ala. 627; Eminent Household v. Gallant, 69 So. 884, 194 Ala. 680; Eminent Household v. Blackerby, 78 So. 821, 201 Ala. 443; Supreme Ruler v. Darwin, 79 So. 259, 201 Ala. 689. And a life policy and the application made for the same and attached as a part thereof must be construed as a single act. Satterfield v. Fidelity, etc., Co., 55 So. 200, 171 Ala. 429; Norris v. New England, etc., Co., 73 So. 377, 198 Ala. 41; Mutual Life, etc., Co., v. Lovejoy, 78 So. 299, 201 Ala. 337, L. R. A. 1918D, 860; Cherokee, etc., Co. v. Brannum, 82 So. 175, 203 Ala. 145; Pacific, etc., Co. v. Hayes, 80 So. 834, 202 Ala. 450.

[3] The two papers in evidence, the application and the policy, will be considered together in ascertaining the intention of the contracting parties. In the absence of statutory provisions forbidding parol contracts to insure, memorandum contracts, or binding receipts or slips or books, it is established that an agent, duly authorized to bind the company by the issue and delivery of contracts for insurance, may make such binding contracts by parol, binding books, binding slips, binding receipts, or binding memoranda, etc. Cherokee, etc., Co. v. Brannum, 82 So. 175, 203 Ala. 145, 148; Manhattan, etc., Co. v. Parker, 85 So. 298, 204 Ala. 313; Reliance Life, etc., Co. v. Russell, 94 So. 748, 208 Ala. 559.

If the contract was with a fraternal benefit society within the terms of the act of 1911, supra, the statute provided:

"The payment of death benefits shall be confined to wife, husband, relative by blood to the fourth degree ascending or descending, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption, or to person or persons dependent upon the member; but if after the issuance of the original certificate the member shall become dependent upon an incorporated charitable institution, he shall have the privilege, with the consent of the writer, to make such institution his beneficiary. Within the above restrictions each member shall have the right to designate his beneficiary, and, from time to time, have the same changed in accordance with the laws, rules or regulations of the society, and no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of the said member; but any society may, by its laws, limit the scope of beneficiaries within the above classes." Code 1923, § 8445.

[4] The applicant, if she had received the policy, might have changed the beneficiary named therein, if done subject to its prescribed form and terms. That the mere is-

suance of the policy would not have established in the beneficiary rights paramount to those of the assured is the rule of old line policies. Morgan v. Prudential Ins. Co., 95 So. 355, 209 Ala. 110; Harris v. Whittington, 93 So. 526, 207 Ala. 551. This rule likewise obtains as to fraternal benefit societies. Supreme Council v. Behrend, 38 S. Ct. 522, 247 U. S. 394, 62 L. Ed. 1182, 1 A. L. R. 966; 1 Williston on Contracts, p. 741, § 396a.

In this jurisdiction it is declared upon a bill against a fraternal benefit association, not showing but that the insured had the right to change the beneficiary, and not disclosing any right of the heir under the certificate, the original beneficiary, who was also the sole heir of the insured, had no right against the association which might be maintained in equity. Slaughter v. Grand Lodge, 68 So. 367, 192 Ala. 301.

[5] This authority just cited is adverted to in Ex parte Mosaic Templars of America (Parker's Case), 103 So. 65, 212 Ala. 471, in the construction of section 8445 of the Code of 1923 (defining beneficiaries and the rights thereof), where it is held that the interest of a beneficiary in the certificate on the life of a member of a fraternal benefit society is a mere expectancy which becomes vested only on the death of the insured. McDonald v. McDonald, 102 So. 38, 212 Ala. 137, 36 A. L. R. 761. We have quoted above the provisions of the statute (section 8445 of the Code of 1923). It would seem to follow that whether, under an old line policy or fraternal insurance, the right of action for failure to promptly issue, or negligence in the due issue of the policy or certificate, pursuant to the application, is in the insured or her personal representative, and not in the beneficiary named in the application. 1 Williston on Contracts, p. 748–50. The case of S. S. S. & I. Co. v. Taylor, 77 So. 79, 16 Ala. App. 241, and pertinent expression therein contained, has not been approved by this court. Parsons v. Yolande, etc., Co., 91 So. 493, 206 Ala. 642, 645. The instant question is not similar to that of an employer who deducts sums from wages of his employees for medical and hospital funds and held liable at the instance of a beneficiary for the failure to provide the same. 22 A. L. R. 1195, note. Such were the cases of Thomas v. T. C., I. & R. Co., 59 So. 627, 178 Ala. 580; Parsons v. Yolande, etc., Co., 91 So. 493, 206 Ala. 642; Sloss-Sheffield S. & I. Co. v. Taylor, 77 So. 79, 16 Ala. App. 241.

The affirmative charges requested by defendant should have been given as to the several counts.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.